UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal No.  25cr10439 |
| v. | ) Violation: |
| MARCUS COBB, | ) Count One: Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349) |
| Defendant | ) Forfeiture Allegation: (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1. Defendant MARCUS COBB lived in Nashville, Tennessee.

2. COBB was the chief executive officer at Mozaic Payments, Inc. ("Mozaic"), a technology business headquartered in Nashville.

3. Rachel Knepp, a co-conspirator not charged as defendant in this Indictment, lived in Nashville. Knepp was Mozaic's Senior Vice President for Growth and Co-Founder.

4. The "Investor" was a private equity firm in Boston, Massachusetts.

5. Mozaic purported to be a technology company that offered customers in the entertainment industry a software application (the "Mozaic App") that processed revenue sharing transactions, for example, by splitting a royalty payment from a music-streaming service among an artist, a recording label, and a distributor. Mozaic claimed that the Mozaic App functioned through an innovative application programming interface ("API"). In fact, neither the Mozaic App nor its API functioned, and the Mozaic App generated no revenue.

6. Mozaic had two business bank accounts on which COBB was the authorized signer:

1

an operational account (the "4258 Account") and a money market account (the "4262 Account"). In the first quarter of 2023, Mozaic's accounts had negative average month-end balances and negative cashflow.

7.      In about March 2023, the Investor contacted COBB about investing in Mozaic's business, based on Mozaic's public profile and representations about the Mozaic App and API.

8.      Starting no later than about May 2023, COBB and Knepp agreed to defraud the Investor by falsely representing Mozaic's financial condition in order to obtain a $20,000,000 investment in Mozaic.

9.      In the late spring, summer, and early fall of 2023, as part of the Investor's financial due diligence process, COBB and Knepp, both in person in Massachusetts and by electronic transmission from Mozaic in Tennessee to the Investor's representatives located in Massachusetts, provided the Investor with false financial documents, including bank statements and balance sheets for Mozaic, and fake customer testimonials about the Mozaic App and API, all to misrepresent Mozaic's profitability.

10.     COBB and Knepp's scheme succeeded, and in September 2023, the Investor provided Mozaic with $20,000,000 in operational funding in exchange for seats on the Mozaic board of directors and equity shares in the company.

11.     Thereafter, to lull the Investor, COBB and Knepp provided the Investor with false quarterly financial reports about Mozaic.  The reports showed that the Mozaic App was generating revenue and that Mozaic's financial condition was improving, while, in fact, Mozaic's financial condition was deteriorating because COBB and KNEPP were using the Investor's funds for personal expenses including lavish travel and entertainment, and the Mozaic App did not actually generate revenue.

12. By about February 2025, COBB and Knepp had spent nearly all of the $20 million Mozaic received from the Investor. The Investor discovered the fraud, and Mozaic collapsed.

### Object and Purpose of the Conspiracy

13. The object of the conspiracy was to commit wire fraud by falsely representing to the Investor that Mozaic was a profitable business worthy of the Investor's capital. The principal purposes of the conspiracy and the scheme to defraud were to make money and to avoid detection of the fraud.

### Manner and Means of the Conspiracy and Scheme to Defraud

14. Among the manner and means by which COBB, Knepp, and co-conspirators known and unknown to the Grand Jury carried out the conspiracy and the scheme to defraud were the following:

   a. Creating false financial documents, including fake bank statements, balance sheets, and profit and loss statements;

   b. Recruiting fake customers and arranging for them to deceive the Investor into believing that Mozaic had an operational software application, API, and paying customers, in exchange for cash payments; and

   c. Creating fake board of directors' materials to misrepresent Mozaic's operations and financial condition.

### Acts in Furtherance of the Conspiracy and the Scheme to Defraud

15. Between about May 2023 and about February 2025, COBB, Knepp, and co-conspirators known and unknown to the Grand Jury performed the following acts, among others, to further the wire fraud conspiracy and the scheme to defraud:

   a. On or about May 9, 2023, COBB falsely emailed Investor staff located in

Massachusetts that Mozaic was "growing rapidly (currently adding $100K+ in revenue monthly)."

  b. On or about May 30, 2023, in Boston, Massachusetts, COBB and KNEPP met with Investor staff and falsely represented that the Mozaic App and API were generating revenue.

  c. On or about June 6, 2023, KNEPP emailed information about three fake Mozaic customers to Investor staff located in Massachusetts.

  d. On or about June 7, 2023, KNEPP shared financial information about Mozaic with Investor staff located in Massachusetts through an online document repository.

  e. On or about June 23, 2023, KNEPP recruited the employees of a friend's company to fill out fake customer reviews of Mozaic to provide to the Investor as part of its due diligence process.

  f. On or about July 17, 2023, in an effort to satisfy the Investor's due diligence process, COBB or KNEPP provided the Investor with fabricated bank statements for Mozaic's bank account that falsely showed that Mozaic's business was generating a positive cashflow.

  g. On or about July 24, 2023, COBB emailed Investor staff located in Massachusetts the false claim that Mozaic earned $753,000 in revenue in June 2023.

  h. On or about July 25, 2023, COBB provided the Investor with false QuickBooks records that reconciled with the false bank statements that COBB and KNEPP had previously provided to the Investor.

  i. On or about July 26, 2023, KNEPP emailed the Investor about setting up interviews of four fake Mozaic customers.

  j. On or about September 12, 2023, KNEPP emailed a fake customer instructions about what to say to deceive the Investor during an interview: "For the sake of this interview, we're going to say that your company . . . has a music distribution arm and that's how you're using

4

Mozaic today."

k.     On or about September 14, 2023, KNEPP emailed another fake customer instructions about lying to the Investor during an interview: "For the sake of this interview, we're going to say you're Artist Relations (A&R) at [Distribution Entity]. [Distribution Entity] is using Mozaic's API to split royalty payments for their artists and collaborators automatically every month."

l.     On or about September 15, 2023, the fake customer from [Distribution Entity] had a Zoom meeting with an Investor employee located in Massachusetts and provided false information about [Distribution Entity's] business relationship with Mozaic.

m.     On or about March 4, 2024, COBB and KNEPP emailed false financial information to the Investor about Mozaic's condition in the fourth quarter of 2023, including, for example, a representation that Mozaic had $17.1 million in cash for operations as of December 31, 2023, when the real balance in Mozaic's accounts was only $10,042,865.50.

n.     On or about July 3, 2024, COBB and KNEPP met with Investor staff in Tennessee and presented false financial information about Mozaic's performance in the first quarter of 2024.

o.     On or about July 8, 2024, COBB and KNEPP caused a Mozaic employee in Tennessee to transmit to the Investor false financial information about Mozaic's condition in the first quarter of 2024, including, for example, a representation that Mozaic's cash in its bank accounts had increased by more than $1 million since December 2023 to $18,961,240.25 as of March 31, 2024, when the cash on hand had actually decreased by more than $1 million and the real balance in the 4258 Account and the 4262 Account was only $9,003,804.53.

p.     In the fall of 2024, COBB and KNEPP provided the Investor with a Mozaic balance sheet "as of October 31, 2024" that falsely showed, among other things, that the combined balance

in Mozaic's accounts had increased to $23,018,715.90, when in fact, as of that date, the real combined bank account balance was $4,284,650.89.

  q. On or about February 27, 2025, COBB emailed the Investor false financial documents, including a balance sheet that showed that the 4258 Account had a balance of $14,166,454.65 as of December 31, 2024, when the real statement for the 4258 Account for that month showed a balance of negative $9,776.43 as of that date.

COUNT ONE
Conspiracy to Commit Wire Fraud
(18 U.S.C. § 1349)

The Grand Jury charges:

16.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 15(q) of this Indictment.

17.     From in or about May 2023 through in or about February 2025, in the District of Massachusetts, and elsewhere, the defendant,

MARCUS COBB,

conspired with Knepp and others known and unknown to the Grand Jury to commit wire fraud, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, to transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, for the purpose of executing the scheme to defraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges:

18. Upon conviction of the offense in violation of Title 18, United States Code, Section 1349, set forth in Count One, the defendant,

**MARCUS COBB**,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following assets:

   a. $1,771,036, to be entered in the form of a forfeiture money judgment.

19. If any of the property described in Paragraph 18, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 18 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON


_____
KRISS BASIL
ELIANNA NUZUM
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS


District of Massachusetts: November 20, 2025
Returned into the District Court by the Grand Jurors and filed.

/s/ Noreen A. Russo
_____
DEPUTY CLERK    at 12:25 PM